# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ROBERT E. GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-CV-878-SAJ |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying Social Security benefits.[2] Plaintiff asserts that the Commissioner erred because (1) the ALJ failed to adequately consider the limitations placed upon Plaintiff by the consultative examining physician; (2) the ALJ failed to adequately develop Plaintiff's asserted mental impairment; and (3) the ALJ's hypothetical question to the vocational expert was incomplete. For the reasons discussed below, the Court **reverses and remands** the Commissioner's decision for further proceedings consistent with this opinion.

---

[1] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

[2] Administrative Law Judge Gene M. Kelly (hereafter "ALJ") concluded that Plaintiff was not disabled by decision dated December 5, 2003. [R. at 16 - 31]. Plaintiff appealed the decision by the ALJ to the Appeals Council. The Appeals Council declined Plaintiff's request for review on September 21, 2004. [R. at 7].

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff was born October 31, 1963. [R. at 59]. Plaintiff alleges that he became unable to work because of a disabling condition on November 9, 2001. [R. at 63]. Plaintiff's medications list included medications for depression and fatigue. [R. at 118].

Plaintiff has been diagnosed with multiple sclerosis. [R. at 133, 173]. Plaintiff was examined by Michael Karathanos, M.D., on May 11, 1999. [R. at 194]. The doctor noted that Plaintiff appeared to be fully oriented and that Plaintiff's mood and behavior were normal. [R. at 194]. Plaintiff's medical assessment was mild neurological deficits due to multiple sclerosis compounded by significant fatigue. [R. at 195].

Plaintiff was examined by Marcelo R. Peres-Montes, M.D. on January 24, 2002. [R. at 197]. Plaintiff's gait and ambulation were normal and Plaintiff was able to climb onto the examination table without difficulty. [R. at 18]. Plaintiff had decreased concentration and appeared easily distracted. [R. at 198]. Plaintiff appeared to exhibit symptoms of decreased and slowing motor functions and concentration. [R. at 199].

Minor W. Gordon, Ph.D., completed a psychological evaluation of Plaintiff on February 26, 2002. [R. at 219]. Plaintiff's mood was described as mildly depressed. Plaintiff's sleep was reportedly disturbed and Plaintiff's appetite was poor. Plaintiff's social-adaptive behavior "is fraught with maladjustment. . . ." [R. at 220]. Plaintiff's immediate retention and recall was adequate. Plaintiff's diagnosis was adjustment disorder with depressed mood, mild. [R. at 220].

Plaintiff was described as a regular marijuana user on January 9, 2002. Plaintiff was also noted as being unable to find steady work due to Plaintiff's prison record. [R. at 226].

A Residual Physical Functional Capacity Assessment was completed by a D.O. on March 11, 2002. [R. at 264]. Plaintiff was noted as able to lift 50 pounds occasionally, 25 pounds frequently, stand or walk six hours in an eight hour day and sit six hours in an eight hour day. [R. at 265]. A second form was completed by Thurma Feigel, M.D., on August 15, 2002. [R. at 292]. Plaintiff was noted as being able to occasionally lift 20 pounds, frequently lift 10 pounds, and stand or walk six hours in an eight hour day. [R. at 286].

A Psychiatric Review Technique ("PRT") form was completed by Janice B. Smith, Ph.D., on March 11, 2002. [R. at 271]. The doctor noted that Plaintiff's impairment was not severe. [R. at 271]. Plaintiff had depressive syndrome with a mild depressive mood. [R. at 274]. Plaintiff was noted as being a regular marijuana user. [R. at 279]. Plaintiff's restrictions of daily living and difficulties in maintaining social functioning were noted as "mild." Plaintiff's difficulties in maintaining concentration and repeated episodes of deterioration were noted as "none." [R. at 281]. A second PRT form was completed by Margaret McKinney, Ph.D., on October 20, 2002. She noted Plaintiff's impairment was not severe. [R. at 204]. Plaintiff had a depressive syndrome and a mild depressed mood. [R. at 297].

Treatment notes dated March 24, 2003, indicate Plaintiff was concerned that he would be reincarcerated based upon drug charges. [R. at 313].

John w. Hickman, Ph.D., completed a disability evaluation of Plaintiff on July 22, 2003. [R. at 383]. He noted that Plaintiff was diagnosed with MS in 1997 and had experienced deterioration of his motor, sensory, and mental functioning. [R. at 383]. The examiner noted that Plaintiff's performance could be a result of his MS which typically impairs motor performance. The examiner also noted that Plaintiff should be administered

the Wechsler Memory Scale Revised or III because of Plaintiff's reported difficulties with memory. Plaintiff was also noted as "may also have a depression secondary to his medical condition. . . ." [R. at 385]. A Mental Medical Source Statement was completed by John W. Hickman, Ph.D., on July 23, 2003. [R. at 382]. Plaintiff was noted as having moderate limitations on the ability to complete a normal workday and work week without interruptions from psychologically based symptoms. All other limitations were noted as no limitations or no significant limitations. [R. at 381]. Numerous questions were marked as "cannot be accurately or reliably answered from the present data. Claimant need[s] to be administered the WMS-R or the WMS-III or the MMPI-2." [R. at 381].

Plaintiff was examined by Dennis A. Rawlings, Ph.D., on September 15, 2003. [R. at 121, 390]. Plaintiff's past history included prison for 12 years, and numerous prior convictions. [R. at 121]. Dr. Rawlings conducted numerous tests on Plaintiff, including a Halstead Right Hand Test, WRAT III, WAIS-III, and Dr. Rawlings additionally examined Plaintiff. Dr. Rawlings noted that "based on Robert's test behavior, mental alertness, cooperation and motivation, today's results are felt to be a reliable and valid assessment of the current level of intellectual ability." [R. at 124]. Dr. Rawlings did note that the MMPI-II test results were invalid because Plaintiff answered an unusual number of questions in a deviant direction. [R. at 124]. The examiner concluded that Plaintiff could not be considered reliable for managing his own funds. [R. at 124]. Recommendations included continuing treatment for depression, a more comprehensive neuropsychological battery, abstinence from alcohol or drugs, and neurological follow-up for Plaintiff's multiple sclerosis. [R. at 125]. Plaintiff's current GAF was noted at 55 - 60 with his past year's GAF at 60-65. [R. at 125].

the Wechsler Memory Scale Revised or III because of Plaintiff's reported difficulties with memory. Plaintiff was also noted as "may also have a depression secondary to his medical condition. . . ." [R. at 385]. A Mental Medical Source Statement was completed by John W. Hickman, Ph.D., on July 23, 2003. [R. at 382]. Plaintiff was noted as having moderate limitations on the ability to complete a normal workday and work week without interruptions from psychologically based symptoms. All other limitations were noted as no limitations or no significant limitations. [R. at 381]. Numerous questions were marked as "cannot be accurately or reliably answered from the present data. Claimant need[s] to be administered the WMS-R or the WMS-III or the MMPI-2." [R. at 381].

Plaintiff was examined by Dennis A. Rawlings, Ph.D., on September 15, 2003. [R. at 121, 390]. Plaintiff's past history included prison for 12 years, and numerous prior convictions. [R. at 121]. Dr. Rawlings conducted numerous tests on Plaintiff, including a Halstead Right Hand Test, WRAT III, WAIS-III, and Dr. Rawlings additionally examined Plaintiff. Dr. Rawlings noted that "based on Robert's test behavior, mental alertness, cooperation and motivation, today's results are felt to be a reliable and valid assessment of the current level of intellectual ability." [R. at 124]. Dr. Rawlings did note that the MMPI-II test results were invalid because Plaintiff answered an unusual number of questions in a deviant direction. [R. at 124]. The examiner concluded that Plaintiff could not be considered reliable for managing his own funds. [R. at 124]. Recommendations included continuing treatment for depression, a more comprehensive neuropsychological battery, abstinence from alcohol or drugs, and neurological follow-up for Plaintiff's multiple sclerosis. [R. at 125]. Plaintiff's current GAF was noted at 55 - 60 with his past year's GAF at 60-65. [R. at 125].

Dr. Rawlings completed a Mental Medical Source Statement on September 12, 2003. [R. at 130, 395]. He noted that Plaintiff had marked limitations in remembering and carrying out detailed instructions, interacting with the general public, responding to superiors, and responding to changes in a work environment. [R. at 128]. Plaintiff had moderate limitations in maintaining concentration, performing activities and maintaining regular attendance, sustaining an ordinary work routine, working without supervision, and completing a normal workday. [R. at 128].

Plaintiff testified at a hearing before the ALJ on June 17, 2003. [R. at 451]. Plaintiff was 39 years old at the time of the hearing before the ALJ. [R. at 456]. Plaintiff stated, at the time of the hearing, that he was homeless. [R. at 456].

According to Plaintiff, he completed thirteen grades in school. Plaintiff stated that his "thirteen grades" included one year of college. [R. at 457].

Plaintiff served in the military from 1981 to 1987. [R. at 457]. Plaintiff was not certain when he last worked, but Plaintiff did work during the prior year. [R. at 458]. Plaintiff also remembers being incarcerated for breaking the law, but was uncertain as to what he did. [R. at 459].

Plaintiff testified that he suffers from extreme fatigue due to his multiple sclerosis. [R. at 460]. Plaintiff also has some vision problems. [R. at 460-61]. Plaintiff has pains and troubles with his stomach. [R. at 462-63]. On some days Plaintiff's legs and knees hurt. Some days he limps and other days he has no problems. [R. at 467]. Plaintiff also stated that he has some mental awareness difficulties. [R. at 468-69].

Plaintiff believes he drives approximately ten miles each week. [R. at 465]. Plaintiff denies alcohol problems and does not remember when he last had alcohol. Plaintiff stated

he had not used marijuana in about one year. [R. at 471]. Plaintiff noted he has numerous side effects from his medications and he sleeps to relieve his symptoms. [R. at 472].

Plaintiff noted that he had lost weight, had no appetite, and had difficulty sleeping. [R. at 473]. Plaintiff believes he could probably sit for about two and one-half to three hours, and stand for about one hour. [R. at 475]. Plaintiff believes he could walk about thirty minutes. [R. at 475].

If Plaintiff's dog was starving and he had a 50 pound bag of dog food he would do his best to carry the dog food to the dog. [R. at 476].

## II. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims. See 20 C.F.R. § 404.1520. Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment
> . . . .

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).[3]

---

[3] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510 and 404.1572). Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. See 20 C.F.R. § 1521. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence.  See 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*.  *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Qualls v. Apfel*, 206 F.3d 1368 (10th Cir. 2000); *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational.  *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

"The finding of the Secretary[4/] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750.  In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a

---

disabled.  If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work.  A claimant is not disabled if the claimant can perform his past work.  If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy.  If a claimant has the RFC to perform an alternate work activity, disability benefits are denied.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

[4/]  Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

preponderance. *Perales*, 402 U.S. at 401. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### III.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ concluded that Plaintiff was not disabled. The ALJ summarized the medical evidence, including the reports of the consultative examiners. The ALJ found that Plaintiff had the RFC to perform light work, with a slightly limited ability to finger, feel and grip; twisting with his torso only occasionally; and work in an environment with low light, low noise, and easy access to restrooms. [R. at 26]. Plaintiff was limited to simple routine tasks and slightly limited in contact with the public, co-workers, and supervisors. [R. at 26]. Based on the testimony of a vocational expert, the ALJ found Plaintiff not disabled. [R. at 28].

### IV.  REVIEW

At the hearing with Plaintiff, the ALJ noted that Plaintiff was claiming a mental impairment, but the record was not fully developed with regard to Plaintiff's claims as to memory confusion. The ALJ stated that he would order a consultative examination for Plaintiff. [R. at 484].

Plaintiff's hearing before the ALJ occurred June 17, 2003. [R. at 451]. The record contains a disability evaluation form John W. Hickman, Ph.D., dated July 22, 2003. [R. at 383]. Dr. Hickman noted that Plaintiff could have depression and suggested additional

testing. Dr. Hickman completed a limitations form, but wrote that numerous questions could not be answered based on the present data. [R. at 381].

The record contains an examination of Plaintiff by Dennis A. Rawlings, Ph.D., on September 15, 2003. [R. at 121, 390]. Dr. Rawlings conducted several tests on Plaintiff noting that the MMPI-II test results were invalid. [R. at 124]. Plaintiff's current GAF was noted at 55 - 60 with his past year's GAF at 60-65. [R. at 125]. Dr. Rawlings also completed a Mental Medical Source Statement indicating that Plaintiff had marked limitations in remembering and carrying out detailed instructions, interacting with the general public, responding to superiors, and responding to changes in a work environment, and moderate limitations in maintaining concentration, performing activities and maintaining regular attendance, sustaining an ordinary work routing, working without supervision, and completing a normal workday. [R. at 128].

The ALJ summarizes these consultative examination records, but the ALJ's decision contains no analysis with respect to the weight given by the ALJ to any of the findings of the consultative examiners. Absent the examinations ordered by the ALJ, the record contains some evidence that Plaintiff suffers from at least a mild form of depression. One consulting examiner recommends additional testing. One consulting examiner indicated Plaintiff had moderate and marked limitations with respect to public interactions, completing tasks, maintaining concentration, working and completing a normal work day. The ALJ never addresses the findings of any of the consulting examiners. The ALJ's RFC does not include all of the limitations placed upon Plaintiff by the doctors that examined Plaintiff. The ALJ provides no reasons in his decision for discounting the opinions of these examining doctors.

The Social Security regulations provide an evaluation process that is followed in the evaluation of a medical opinion. 20 C.F.R. § 404.1527(d). The ALJ is to consider the examining relationship, the treatment relationship, the supportability of the conclusions, the consistency, specialization, and other factors. 20 C.F.R. § 404.1527(d). The ALJ never mentions any of these factors. The ALJ does not specifically discuss the opinions of the consultative examiners. The Court concludes that the ALJ has not adequately discussed the opinions of the consultative examiners or the limitations proposed by the consultative examiners. On remand, the ALJ should evaluate the opinions of the consultative examiners and discuss the weight given to the findings of such examiners.

In addition, the ALJ's decision contains a very limited discussion of the four areas of functional limitations and the ALJ's findings with regard to each decision. 20 C.F.R. § 1520a(3). The regulations provide that "[a]t the administrative law judge hearing . . . level, the written decision issued . . . must incorporate the pertinent findings and conclusions based on the technique. The decision must show . . . the functional limitations that were considered in reaching a conclusion abut the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." 20 C.F.R. § 1520a(e)(2). Although the ALJ briefly lists each functional limitation, it is not possible to discern from the ALJ's decision, what evidence he concludes specifically supports each finding of functional limitation. On remand, the ALJ should discuss what evidence, for each functional limitation, leads to the ALJ's conclusion with regard to that functional limitation.

Dated this 2nd day of February 2006.

Sam A. Joyner
United States Magistrate Judge

-- 10 --